## Hlawati v. Maeder-Hlawati Company et al.

*Corporations—Dissolution—Reduction of capital—Officers—Stockholders—Jurisdiction.*

1. Mistreatment by one stockholder of another is not ground for dissolving a corporation or reducing its capital stock.
2. A bill in equity for the dissolution of a corporation and reduction of its capital stock will be dismissed for lack of jurisdiction where it appears that plaintiff was not driven out of the corporation by alleged mistreatment by other stockholders, but retired therefrom of his own motion.

Bill in equity to dissolve a corporation and reduce its capital stock. C. P. Allegheny Co., Jan. T., 1926, No. 3405.

*R. B. Ivory,* for plaintiff; *Burgwin, Scully & Burgwin,* for defendants.

SWEARINGEN, J., April 24, 1926.—The complainant was and still is a stockholder in the defendant corporation, and until July 16, 1924, he was a director and the president thereof, when he resigned. He is a minority stockholder; Fred Maeder, one of the defendants, is the majority stockholder; each of the other individual defendants holds a small amount of stock. The corporation was and still is engaged in a general merchant tailoring business at retail in Pittsburgh, and it always has been solvent. Thereafter this bill was filed, wherein the complainant alleged fraud and mismanagement on the part of Fred Maeder, and imposition upon him by Fred and J. F. Maeder, and he prayed for a dissolution of the corporation and a distribution of the assets among the stockholders. He also prayed, in the alternative, for a decree

requiring a reduction of the capital "to an amount actually needed" in the business and for distribution of the balance among the stockholders. An answer was filed denying the material averments and testimony was taken.

### Findings of fact.

1. E. G. Hlawati, the complainant, is a resident and citizen of Pittsburgh, Pennsylvania, where for many years he has been and now is engaged in business as a retail merchant tailor. Fred Maeder, one of the defendants, is a resident and citizen of Pittsburgh, Pennsylvania, where for many years he has been and now is engaged in the merchant tailoring business. J. F. Maeder is the father of Fred Maeder, and he and Adolph Frey are also citizens and residents of Pittsburgh, Pennsylvania.

2. For a considerable time prior to Dec. 7, 1916, E. G. Hlawati (complainant) and one E. Coulter had been partners engaged in the business of merchant tailoring—Mr. Coulter being a silent partner.

3. Dec. 7, 1916, E. G. Hlawati, E. Coulter and Fred Maeder entered into a written contract—whereby Hlawati and Coulter agreed to dissolve their partnership and divide the net assets equally, Hlawati to take the whole merchandise and stock and to pay Coulter one-half thereof in cash; Fred Maeder was to lend Hlawati the money necessary to make the purchase, and as security therefor Hlawati and Coulter were to assign all the merchandise and stock to Fred Maeder, who was to transfer the same to a corporation to be later formed; Hlawati and Fred Maeder agreed to thereupon form a corporation under the laws of Pennsylvania, with a capital of approximately $15,000, fully paid, of which Hlawati was to furnish his own merchandise and stock at about $6000, and Fred Maeder his own merchandise and stock at about $9000, and capital stock in the corporation was to be issued accordingly; Fred Maeder further agreed to lend the new corporation not exceeding $5000; it was agreed that Fred Maeder was to be the treasurer of the new corporation and to have exclusive control of the finances, subject to the directors; and in an *addenda* it was finally agreed between Fred Maeder and Hlawati that, for the first six months, the corporation should pay each of them $35 per week and thereafter $50 per week, and that Hlawati should be president and secretary, and Fred Maeder should be vice-president and treasurer.

4. Shortly after the agreement (Findings of fact No. 3) E. G. Hlawati and E. Coulter dissolved their partnership and the division was made, and Fred Maeder advanced the money whereby the merchandise and stock of Hlawati and Coulter were transferred in accordance with that contract.

5. Pursuant to the agreement (Findings of fact No. 3) Edward Hlawati, Fred Maeder and John F. Maeder applied to the Governor of Pennsylvania for a charter of "Maeder-Hlawati Company," to conduct a general tailoring business at retail in Pittsburgh, Pennsylvania, with a capital stock of $5000, divided into 50 shares of $100 each, of which Hlawati had subscribed for 24 shares, Fred Maeder for 24 shares and John F. Maeder for 2 shares; the directors were to be the same and the corporation was to exist perpetually. The charter was granted Jan. 3, 1917, and the same is of record in the Recorder's Office of Allegheny County, Pennsylvania, in Charter Book vol. 51, at page 86.

6. Pursuant to the charter (Findings of fact No. 5) the Maeder-Hlawati Company was organized about February, 1917, and E. G. Hlawati was chosen president and secretary and Fred Maeder was chosen vice-president and treasurer; and the business was opened prior thereto in the Frick Annex Building, Pittsburgh, Pennsylvania. The capital stock was at once increased to $15,000,

which was issued to the stockholders in substantially the proportions of their contributions of goods and fixtures.

7. There never was any partnership between the complainant and Fred Maeder. Neither was there any agreement that the complainant should withdraw from the corporation, nor that it should be dissolved whenever any party should become dissatisfied and desired to do so.

8. The business prospered, and with the consent of all parties, the capital was increased to $100,000—only part of which was issued. The holdings of the respective parties were, on June 11, 1923, as follows: Fred Maeder, 273.6 shares; J. F. Maeder, 6.4 shares; E. G. Hlawati, 182 shares, making a total of 462 shares.

9. June 11, 1923, Fred Maeder, E. G. Hlawati and W. J. Martin entered into a written contract, whereby it was agreed that the corporation should sell to Martin 100 of its shares of stock for the sum of $10,000; that certain other issues should be made and purchased so that the holdings of the respective parties should be as follows: Fred Maeder, 318 shares; E. G. Hlawati, 212.5 shares; J. F. Maeder, 1.5 share; W. J. Martin, 100 shares.

Provision was also made that if any of the parties should desire to sell his stock, should die, be declared a bankrupt or have an execution issued against him, his stock should first be offered to the other stockholders for sixty days, but there was no requirement that the latter should purchase. W. J. Martin was to be elected vice-president.

10. The agreement (Findings of fact No. 9) was duly performed. W. J. Martin was chosen vice-president and assumed the duties of that office.

11. On or about June, 1922, the corporation established what was called a "Ready-to-Wear Department," and W. J. Martin was made manager thereof. The department flourished for a time, became unsatisfactory, and was then discontinued; and eventually W. J. Martin severed his connection with the corporation. His stock was returned to the corporation and has never been reissued.

12. Meantime the corporation had accumulated quite a surplus, a large part of which was invested in bonds and stocks and in United States bonds, the cash and bonds amounting to over $30,000 about the time the complainant resigned. There was no contention that any of these securities were improper investments.

13. Later the complainant addressed the following letter to the vice-president, in words and figures thus:

"Pittsburgh, Pa., July 16, 1924.

"Mr. W. J. Martin, Vice-President,
"Maeder-Hlawati Co.

"Dear Sir: I herewith beg to sever my connection as president of above Corporation, same to take effect at once and therefore desire stock held by me to be bought and taken up by said Corporation for $15,000, no more and no less, and money turned over to me at the earliest possible time.

"My reason for so doing is that it is my wish to enter into business individually, and so my future depends on the receipt of the earliest possible remittance of my interest, which would be greatly appreciated by

"Yours very truly,
"E. G. HLAWATI."

14. Within a few days thereafter, Fred Maeder sent for Hlawati and endeavored to induce him to return. He asked the latter if he would take merchandise and stock in part for his interest, to which Hlawati assented and

then Fred Maeder advised him to go upon his vacation and when the latter returned the matter would be fixed up. When Hlawati did return, Fred Maeder refused to do anything, saying he had changed his mind. Hlawati left the corporation and later he established a merchant tailoring business of his own at 335 Fifth Avenue, Pittsburgh, Pennsylvania.

15. The complainant took no action to obtain redress for his alleged grievances, other than that described in findings of fact Nos. 13 and 14, prior to the filing of the bill in this case.

16. The Maeder-Hlawati Company is and it always has been solvent, and its business is successful and profitable.

17. The evidence does not establish that the capitalization of the Maeder-Hlawati Company is unnecessary and not proper for the business which it is conducting.

18. The evidence does not show that Fred Maeder has committed any fraudulent acts in his dealings with the complainant or as an officer and a director of the Maeder-Hlawati Company.

## Opinion.

The court is asked by a stockholder to decree the dissolution of a solvent corporation and the distribution of its assets among the stockholders; and, if the court find relief can be afforded without a dissolution, then to decree a reduction of its capital to what is needed and a distribution of the remainder to the stockholders. This corporation exists "perpetually" by the terms of its charter. The question at once arises: What power has a court of equity, under the law of Pennsylvania, to grant the relief demanded? Or, to state the inquiry otherwise, what authority has one department of the government (the judicial), at the instance of a private stockholder, to destroy or modify what another branch (the executive) has lawfully done? It seems to us that this question is answered negatively by our Supreme Court in Murphy v. Farmers' Bank, 20 Pa. 415, 419.

Besides, the complainant does not pretend to have first exhausted his remedies within the corporation itself, nor did he aver facts which would have shown such a proceeding to have been useless. He seems to have mistakenly supposed he had the right to take the course he did by reason of the contract (Findings of fact No. 9). But the Maeder-Hlawati Company was not a party to that contract at all. That was a mere agreement between two stockholders and Mr. Martin, who sought to become a stockholder. Neither did the complainant follow the course prescribed in that contract when he resigned.

In adjudicating this controversy, we have been obliged to rely very largely upon the writing obtainable, because the complainant's oral testimony was so uncertain and so contradictory as to be of small value. Note the averments in the bill of the existence of a partnership between himself and Fred Maeder and how he had been induced to enter a corporation. He was contradicted by the contract, by the charter and by the lease from H. C. Frick, which provided that as soon as the corporation had been chartered it was to be substituted as lessee. And, finally, the complainant admitted there never had been a partnership between himself and Fred Maeder.

There is no evidence to show to what extent, even upon the complainant's own theory, the capital stock should be reduced. Likewise, it is incorrect to charge that complainant had been refused access to the books of the corporation. As secretary, he was their custodian. He did see them, with an accountant, before this trial. In any event, the courts were open for him to compel access at any proper time.

A large amount of testimony was taken to show that Fred Maeder had mistreated the complainant, the purpose being to prove the former had acted so badly that it was impossible for the latter to remain in the business. These men did have differences during the last two or three years the complainant was there. Two or three times outside parties were summoned to "arbitrate" their disputes. No doubt Fred Maeder was at times somewhat arbitrary and, to a man of complainant's sensibilities, his conduct was not kind. But, under the laws of Pennsylvania, mistreatment by one stockholder of another is not a sound reason for a court of equity to decree the dissolution of a corporation or the reduction of its capital stock. And it will be observed that complainant gave no such reason for his resignation (Findings of fact No. 13).

The complainant substantially charged Fred Maeder with fraud in closing out the ready-to-wear department at a loss, in making a false inventory and in charging off accounts when he knew they were good—these acts for the purpose of reducing the income so that administrative salaries could not be paid complainant. It is needless to say that fraud must be proved and that the burden thereof is upon the complainant.

As to the first allegation, the complainant failed. The last of the ready-to-wear was sold in bulk and there was a loss. The corporation had determined to close out this department. The goods were offered to a large number of stores, they were extensively advertised, and after these efforts they were sold in bulk. A mere loss is not sufficient to fasten fraud upon the defendant. The complainant thought the stock was worth more, but how much he did not clearly state. The evidence is not sufficient to establish fraud on the part of Fred Maeder in this connection.

As to the second allegation, the weight of the evidence is with Fred Maeder. He testified that the inventory was taken at cost of the goods or at the market, whichever was the less. The complainant and Mr. Martin thought the market value of certain old patterns and other goods should be higher. To meet their objections, Fred Maeder offered to increase the inventory $1500. This was accepted, or at least no further objection was made, and the inventory was approved by the corporation. There was no positive proof of fraud, and we certainly cannot infer fraud from such circumstances.

As to the third allegation, the complainant asserted that Fred Maeder had charged off a larger amount of accounts and much sooner than he ordinarily did. There was a number of accounts charged off, and almost all of them were eventually collected. But as to the few about which Fred Maeder was interrogated, he gave sound reasons for his action. In some cases he may have made mistakes, but surely, under the evidence, no fraud could be inferred therefrom. In all these matters of alleged fraud, the evidence discloses that Fred Maeder did no more than make some mistakes and that he had but used his judgment in the matter. But mistakes and errors of judgment are not sufficient evidence from which to conclude that the fraud alleged in this bill was established.

The complainant has argued at length that the wrongs he has charged Fred Maeder with having committed were intended to drive him (complainant) out of the corporation. A sufficient answer to this argument is that Fred Maeder could have, at any time, voted the complainant off the board of directors and have deprived him of his offices in the corporation—and that without resorting to the cumbrous and uncertain methods charged. Furthermore, as soon as Fred Maeder learned of the complainant's letter (Findings of fact No. 13), he sent a mutual friend to induce the complainant to return.

Hlawati v. Maeder-Hlawati Company et al.

The complainant was not driven out of the corporation; he took his departure of his own motion; and we are unable to perceive how, under the laws of Pennsylvania, we can grant him any relief.

From the foregoing we reach the following

### Conclusions of law.

First. Under all the evidence, the complainant is not entitled to the relief for which he has prayed.

Second. Upon the facts found and the law of Pennsylvania, this court is without jurisdiction to decree the dissolution of the Maeder-Hlawati Company or the reduction of its capital stock.

Third. The complainant's bill should be dismissed at his costs.

From William J. Aiken, Pittsburgh, Pa.