## Kennedy v. Medical Service Association of Pennsylvania (No. 1)

*William D. Boswell, Compton, Handler, Berman & Boswell, S. Regen Ginsburg,* for plaintiffs.

*William H. Wood, George H. Hafer, Hull, Leiby & Metzger,* for defendant.

SHELLEY, J., January 10, 1966.—This is an action of quo warranto in which two of the plaintiffs, Frank Kennedy, Jr., and Marie Urbany, are subscribers of Medical Service Association of Pennsylvania (hereinafter referred to as "Blue Shield") ; two of the plaintiffs, Martin L. Fleishman and Arnold W. Newman, are licensed and practicing podiatrists in the Commonwealth of Pennsylvania; and the other plaintiff, Pennsylvania Podiatry Association, is a nonprofit corporation representing approximately 60 percent of the licensed and qualified podiatrists in Pennsylvania. Plaintiffs seek to have Blue Shield dissolved and its assets distributed for the reason that the Act of June 27, 1939, P. L. 1125, as amended, 15 PS §2851-1501 (the Blue Shield Regulatory Act), under which it is operated is unconstitutional and void, insofar as it operates to exclude podiatrists from the Blue Shield plan.[1] Defendant has filed preliminary objections in the nature of a demurrer to plaintiffs' complaint.

---

[1] This is one of four related cases involving podiatry. The other

There are two facets to plaintiffs' attack upon the constitutionality of the Blue Shield Regulatory Act. These facets are: (1) The act is so discriminatory against podiatrists as to be in violation of article III, sec. 7, of the Pennsylvania Constitution prohibiting special laws regulating trade and in violation of the equal protection of the laws provision of the Fourteenth Amendment to the Federal Constitution; and (2) the statutory exclusion of podiatrists from the Blue Shield plan is so arbitrary and unreasonable as to deprive podiatrists of their property without due process of law in violation of article I, sec. 9, of the Pennsylvania Constitution and the Fourteenth Amendment to the Federal Constitution, and deprives podiatrists of their freedom of contract and the right to possess and enjoy property, in violation of article I, sec. 1, of the Pennsylvania Constitution.

In considering whether those provisions of the Blue Shield Regulatory Act which exclude podiatrists and podiatry services from the Blue Shield plan are based upon a valid classification, we must be guided by the principle enunciated in section 52 of the Act of May 27, 1937, P. L. 1019, art. IV, 46 PS §552, which provides:

"In ascertaining the intention of the Legislature in

three are: (A) Martin L. Fleishman v. Medical Service Association of Pennsylvania, no. 516, Commonwealth docket, 1964, which is an action of mandamus to compel Medical Service Association of Pennsylvania (Blue Shield) to register podiatrists as participating doctors under the Blue Shield plan; (B) Leon Sandler v. Audrey R. Kelly, Insurance Commissioner and Dr. Charles L. Wilbar, Jr., Secretary of Health, no. 2672, equity docket, no. 517, Commonwealth docket, 1964, which is an action in equity to enjoin enforcement of the Blue Shield Regulatory Act of 1939, P.L. 1125, as amended, because of its alleged unconstitutionality; (C) Frank Kennedy v. Medical Service Association of Pennsylvania, no. 2673 equity docket, which is an action in equity to enjoin an alleged conspiracy on part of defendants to exclude podiatrists from the Blue Shield plan, reported at 39 D. & C. 2d 45.

the enactment of a law, the courts may be guided by the following presumptions among others:

". . . .

"(3) That the Legislature does not intend to violate the Constitution of the United States or of this Commonwealth; . . . ."

The uniform test to be applied in attacking the constitutionality of a statute is set forth in Daly v. Hemphill, 411 Pa. 263 (1963), wherein Mr. Justice Roberts, speaking for the court, said on page 271.

" 'An Act of Assembly will not be declared unconstitutional unless it *clearly, palpably* and *plainly* violates the Constitution' ".[2]

Moreover, the burden rests heavily upon the party seeking to upset legislative action on constitutional grounds; all doubt is to be resolved in favor of sustaining the legislation: Milk Control Commission v. Battista, 413 Pa. 652, 659 (1964).

The Blue Shield Regulatory Act does exclude podiatrists and podiatry services from the Blue Shield plan. However, the mere fact that podiatrists are thus excluded does not, ipso facto, constitute a violation of any one of the aforementioned constitutional provisions which prohibit certain types of discriminatory legislation. Such an exclusion is entirely valid and proper under those constitutional provisions if the exclusion is based upon a reasonable classification.[3]

When the exclusion of podiatrists from the Blue Shield plan is analyzed in the light of the principles

---

[2] Emphasis in the opinion.

[3] As to article III, sec. 7, of the Pennsylvania Constitution, see Milk Control Commission v. Battista, supra; Howe v. Smith, 203 Pa. Superior Ct. 212 (1964); and as to the equal protection clause of the fourteenth amendment to the Federal Constitution, see Empire Box Corp. of Stroudsburg v. Chestnut, 54 D. & C. 162, 56 Dauph. 338 (1944), affirmed per curiam 352 Pa. 418 (1945); Howe v. Smith, supra; Lindsley v. Natural Carbonic Gas Company, 220 U. S. 61 (1911); Morey v. Doud, 354 U. S. 457 (1957).

stated in the foregoing cases, and considering the narrow limits imposed by the statute upon the practice of podiatry, there is no question as to the soundness of the classification involved in this case.

The claims of unconstitutionality asserted by plaintiffs against the Blue Shield Regulatory Act are based solely upon the allegation contained in paragraph 6 of the complaint, which avers that:

"Plaintiffs, MARTIN L. FLEISHMAN and ARNOLD W. NEWMAN, are duly licensed by the Commonwealth of Pennsylvania to perform and have performed, certain surgical procedures of patients, which procedures are compensable according to a schedule of payments prepared by Defendant, Medical Service Association of Pennsylvania, however, pursuant to the Act of June 27, 1939, P. L. 1125, Defendant, Medical Service Association of Pennsylvania, has refused and continues to refuse to compensate Plaintiffs, MARTIN L. FLEISHMAN and ARNOLD W. NEWMAN, directly, or to pay the patient directly as provided when a subscriber selects a non-participating doctor".

Since plaintiffs, Martin L. Fleishman and Arnold W. Newman, are podiatrists, they are referring only to *treatment involving the foot*,[4] for they are specifically limited by statute to treatments of that member of the body. Accordingly, the above-named plaintiffs are basing their claim that the aforementioned exclusion is unconstitutional solely upon the fact that, pursuant to the Blue Shield Regulatory Act, Blue Shield makes payment under its fee schedule for procedures involving the foot when performed by *doctors of medicine* or *doctors of osteopathy*, whereas it refuses to make payment for those same procedures when performed by *podiatrists*. The issue to be resolved at this point is whether, *insofar as the treatment of the foot is con-*

---

[4] Emphasis ours unless otherwise noted.

*cerned,* the legislature was observing a sufficiently reasonable basis of classification when it provided in the Blue Shield Regulatory Act that such treatment could be provided only through doctors of medicine and doctors of osteopathy. This act by the legislature was entirely consistent with the classification that had long been established under Pennsylvania legislation regulating the practice of the healing arts by various types of practitioners.

The Blue Shield Regulatory Act does not exclude only podiatrists from the Blue Shield plan. The provision of the act which limits the Blue Shield coverage to services provided by doctors of medicine, doctors of osteopathy and doctors of dental surgery also operates to exclude such other limited practitioners as chiropractors, optometrists, physical therapists, cosmetologists, midwives and registered nurses from the Blue Shield plan.

At the time the Blue Shield Regulatory Act was adopted in 1939, it was uniformly recognized that under the Medical Practice Act of June 3, 1911, P. L. 639, as amended by section 3 of the Act of July 18, 1935, P. L. 1329, 63 PS §409, a doctor of medicine was authorized to practice medicine and surgery in any and all of its branches. The section contained the following provision, in part, as to the qualifications of doctors of medicine:

"All persons who have complied with the requirements of the rules and regulations of the board, and who shall have passed a final examination, and who have otherwise complied with the provisions of this act, shall receive from the Department of Public Instruction, acting for the said board, a licensing certificate entitling them to the right to practice medicine and surgery, or special branch or branches of medicine and surgery, as provided for in section six, [of this act] in this Commonwealth; . . . . "

The Medical Practice Act did not specifically define

the term "medicine and surgery" until the amendments made by the Act of August 6, 1941, P. L. 903, sec. 1, 63 PS §401, which provides:

"(c) The term 'medicine and surgery' as used in this act shall mean the art and science having for their object the cure of diseases of, and the preservation of the health of, man, including all practice of the healing art with or without drugs, except healing by spiritual means or prayer.

"(d) The term 'healing art' as used in this act shall mean the science of diagnosis and treatment in any manner whatsoever of disease or any ailment of the human body".

Article VIII, sec. 101, of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §601, defines "doctors of medicine" as follows:

"The following words and phrases, when used in any law hereafter enacted, unless the context clearly indicates otherwise, shall have the meanings ascribed to them in this section:

". . . .

"(36) 'Doctor of medicine,' an individual licensed under the laws of this Commonwealth to engage in the practice of medicine and surgery in all its branches".

It is evident under the foregoing legislation that even as to the treatment of the foot, there is a vast difference between the scope of service which doctors of medicine and doctors of osteopathy are authorized to furnish, as compared with the scope of treatment which podiatrists may provide.

Even though the definition of podiatry has been changed over the years so as to permit podiatrists to engage in a somewhat broader field of practice than originally was the case when they were given limited licenses under the Medical Practice Act of 1911, supra, as variously amended, a podiatrist is still limited to treatment of the foot. Furthermore, even in the nar-

row field of practice, the podiatrist is specifically prohibited from performing any amputations of the leg, foot or toes, or from "treating systemic diseases of the bones, ligaments, muscles of the feet or any part of the body".

The word "systemic" is defined in Schmidt's Attorneys' Dictionary of Medicine as follows:

"Pertaining to, or involving, the body as a whole rather than any particular part of it".

Accordingly, if a person seeking treatment of the foot has a foot condition which requires amputation of the toe, foot or leg, or if he has some foot condition which is a reflection of disease elsewhere in the body, a podiatrist may well be unable to provide adequate service.

By way of contrast, doctors of medicine and doctors of osteopathy are qualified and authorized to diagnose and treat, in any way deemed necessary, any condition which may arise in the foot, even though it is a symptom of disease elsewhere in the body and even though the treatment requires amputation of the toe, foot or leg.

This difference in scope of practice required by legislation, which has been sustained by the courts and which is not challenged here, is an entirely reasonable and justifiable basis for limiting the Blue Shield coverage to services provided by doctors of medicine and doctors of osteopathy.

By limiting Blue Shield coverage, insofar as treatment of the foot is concerned, to the services of doctors of medicine and doctors of osteopathy, the legislature has taken reasonable precautions against possible duplication in the expenses of treatment, and has made certain that there will be comprehensive diagnostic ability and service in those situations in which the conditions appearing in the foot may involve more comprehensive treatment than that which can be furnished by podiatrists.

Furthermore, if the argument made by plaintiffs in this case were to be carried to its logical conclusion, it would be impossible for the legislation to impose any limitations upon the practitioners to be included in the Blue Shield plan. Plaintiffs are contending here, in effect, that Blue Shield must make payment for any service performed by a limited practitioner of the healing art, if that service is one for which Blue Shield pays doctors of medicine or doctors of osteopathy under its fee schedule. Plaintiffs are referring specifically only to podiatry. services in this connection, but the same argument would compel the inclusion of optometric services, midwife services, nursing services and other limited services in the Blue Shield plan. This is clearly not a reasonable requirement, and there is no principle of constitutional law which would require the inclusion of every type of practitioner in the Blue Shield plan in order for the legislation establishing that plan to be constitutional.

The validity of the classification involved in this case is supported by the recent decision of the Pennsylvania Superior Court in the case of Howe v. Smith, 203 Pa. Superior Ct. 212.

Plaintiff in the Howe case brought an action in equity to restrain the Pennsylvania Secretary of Revenue and his subordinates from refusing to accept certificates from chiropractors as to the physical fitness of certain motor vehicle operators. Preliminary objections in the nature of a demurrer were filed by defendant. These preliminary objections were sustained by this court. See 81 Dauph. 391 (1963). Our decision was affirmed by the Superior Court. Plaintiff had contended in the Howe case that the action of the Secretary of Revenue constituted discrimination against chiropractors, in violation of the equal protection of the law clauses of the Fourteenth Amendment to the United States Constitution and of article I, sec. 1, of the Pennsylvania Constitution.

In the course of its opinion, the court said, on page 220:

"The Secretary of Revenue in following the distinction between physicians and chiropractors recognized by the legislature was acting within the discretion given him by the legislature, and was not unconstitutionally discriminating between these professions".

The second facet of the constitutional objections raised by plaintiffs is based upon the claim that the statutory exclusion of podiatrists from the Blue Shield plan is so arbitrary and unreasonable as to destroy plaintiffs' property rights and freedom of contract guaranteed by article I, sec. 1, and article I, sec. 9, of the Pennsylvania Constitution, and the fourteenth amendment to the Federal Constitution. It is well established that these constitutional guarantees of property and contract rights are not violated by a proper exercise of police powers.[5]

It is uniformly recognized by both State and Federal courts that a statute must meet two tests if it is to be sustained as an exercise of the police power. These tests are: (1) Is the objective sought to be attained by the statute within some recognized field of police regulation; and (2) are the means adopted by the statute reasonably related to the attainment of the desired objective?

When the legislature adopted the Blue Shield Enabling Act (Act of May 5, 1933, P. L. 289, sec. 219 added, as amended, 15 PS 2851-219) and the Blue Shield Regulatory Act, it did so to meet the necessity

---

[5] As to article I, sec. 1, of the Pennsylvania Constitution, see Cott Beverage Corporation v. Horst, 380 Pa. 113 (1955); Commonwealth v. Zasloff, 338 Pa. 457 (1940); Gambone v. Commonwealth, 375 Pa. 547 (1954). As to article I, sec. 9, of the Pennsylvania Constitution, see Gambone v. Commonwealth, 375 Pa. 547 (1954). As to the fourteenth amendment to the Federal Constitution, see Nebbia v. New York, 291 U. S. 502 (1934).

described in section 2 of the Blue Shield Regulatory Act, 15 PS §2851-1502, which provides:

"It is hereby declared that adequate medical, osteopathic and dental services are essential for the maintenance of the physical and mental health of the residents of the Commonwealth, and that it is necessary that provision be made for adequate medical, osteopathic and dental services to persons of low income who are unable to provide such services for themselves or their dependents without depriving themselves or their dependents of such necessaries of life as food, clothing and shelter": Act of June 27, 1939, P. L. 1125, sec. 2, as amended.

Legislation directed toward these ends is well within a recognized area of police power regulation, for it directly involves the health and welfare of persons of low income.

The remaining issue to be resolved in this connection is whether or not that portion of the legislation which excludes podiatrists from the Blue Shield plan (which is the only portion objected to by plaintiffs) is reasonably related to the attainment of the objectives which the legislature sought to achieve by this legislation.

In considering whether the statutory exclusion of podiatrists from the Blue Shield plan meets this test of police power validity, it is appropriate to review certain of the same aspects of this exclusion as were considered earlier in this opinion in connection with the issue of discrimination. As frequently happens in cases involving not only issues of equal protection of the law but also issues of due process of law, many of the same factors must be considered in connection with each of such issues.

We have already discussed the propriety of the classification upon which the legislature based its action in limiting Blue Shield coverage to service provided by doctors of medicine and doctors of osteopathy, insofar

as the treatment of the foot is concerned, and the legislation describing the respective fields of practice of doctors of medicine and doctors of osteopathy on the one hand, and podiatrists on the other hand. This legislation establishes beyond any question of doubt that doctors of medicine and doctors of osteopathy are authorized to treat any part of the body and to provide services which are appropriate for the alleviation of any condition which may be encountered. If some condition of the foot is merely the reflection of disease or injury elsewhere in the body, a doctor of medicine or doctor of osteopathy can diagnose the ailment and administer whatever additional treatment may be required, regardless of its nature. If amputations of the toe, foot or leg are indicated, here again the doctor of medicine or doctor of osteopathy is authorized to engage in any such broad field of practice, while podiatrists are specifically prohibited from amputating toes, the foot or leg and from treating systemic diseases of the bones, ligaments or muscles of the feet, or any part of the body.

It follows that the limitation of the Blue Shield coverage, insofar as treatment of the feet is concerned, to services provided by doctors of medicine and doctors of osteopathy is reasonably designed to enhance the effectiveness of the Blue Shield plan. Such limitation will frequently operate to avoid duplication of services, incomplete treatment and additional expense in the case of any subscriber who seeks treatment of the foot. Any limitation which has such effect materially furthers the operation of the Blue Shield plan and constitutes a valid exercise of the police power, which is entirely proper for the legislature to adopt.

The only allegation of fact made in plaintiffs' complaint in support of their claim that the Blue Shield Regulatory Act is unconstitutional is that podiatrists are licensed to perform some of the same procedures

involving the foot as those for which Blue Shield makes payment when performed by doctors of medicine and doctors of osteopathy. This allegation falls far short of invalidating the exclusion of podiatrists from the Blue Shield plan as exercise of the police power, or of overcoming the presumption of constitutionality which must be afforded to all legislation. Accordingly, we hold that the act meets all constitutional requirements.

The remaining issues raised in defendant's demurrer filed in this action in quo warranto relate to the sufficiency of plaintiffs' complaint in setting forth a cause of action.

Since this is an action challenging the authority of a corporation, plaintiffs had an election as to whether to seek (1) merely a limitation or modification of the Blue Shield's corporate charter, insofar as the inclusion of podiatrists in the Blue Shield plan is concerned, or (2) a complete dissolution of defendant corporation and a distribution of its assets. Regardless of which of these two objectives plaintiffs might elect to pursue, it is incumbent upon them to make averments sufficient to support the type of action elected.

Plaintiffs conclude their complaint with a request that the court "dissolve the corporate defendant and order the distribution of its assets". It is obvious that plaintiffs have elected to seek a complete forfeiture of Blue Shield's charter and a distribution of its assets, rather than a mere modification of the charter so as to effect the inclusion of podiatrists in the Blue Shield plan.

In order to prevail, the complaint must aver that Blue Shield's charter is invalid and that plaintiffs have an interest in the complete dissolution of Blue Shield which is distinct from that of the general public. Both of such averments are necessary to support an action of quo warranto of the type here involved: Sherman v. Yiddisher Kultur Farband, 375 Pa. 108 (1953).

The only averments in plaintiffs' complaint which relate in any way to the exercise or extent of Blue Shield's corporate franchise are contained in paragraphs 6 and 7.

In paragraph 6 of the complaint, plaintiffs merely aver that "pursuant to the Act of June 27, 1939, P. L. 1125" (the Blue Shield Regulatory Act), defendant, Blue Shield, has refused and continues to refuse to pay for podiatry services performed for subscribers.

In paragraph 7 of the complaint, plaintiffs merely allege that the Blue Shield Regulatory Act is unconstitutional and void in various respects "insofar as it attempts to exclude podiatrists and their patients from coverage" under the Blue Shield plan.

The corporate purpose of Blue Shield is set forth in its charter as follows: [6]

"The purposes for which the corporation is to be formed are:

"(A) To establish, maintain and operate throughout the Commonwealth of Pennsylvania a Nonprofit Medical Service Plan whereby medical services or certain classes or kinds of medical services may be provided in accordance with and subject to the provision of the Nonprofit Corporation Act of 1933, P. L. 289, as amended by Act No. 398, of the Regular Session of the General Assembly of 1939, and Act No. 399 of the said Session of 1939.

"(B) To do everything and anything necessary, suitable, proper, convenient and incidental to the aforesaid purposes or which may be done by a non-profit corporation organized for such purposes under the laws of the Commonwealth of Pennsylvania".

It is obvious that the charter affects podiatrists and

---

[6] Blue Shield was incorporated by the Court of Common Pleas of Dauphin County on September 5, 1939, to June term, 1939, no. 403.

podiatry services only by virtue of the fact that the Blue Shield's corporate purposes are made co-extensive with the authorizations set forth in the Blue Shield Enabling Act and in the Blue Shield Regulatory Act. Plaintiffs' complaint does not contain any allegation that defendant's charter is contrary to any provision of either of such acts or that it has been violating any provision of its charter or of said acts. Plaintiffs go no further than to contend that the Blue Shield Regulatory Act is unconstitutional and void, insofar as it attempts to exclude podiatrists and podiatry services from the Blue Shield coverage.

As we have already said, there is a strong presumption that the provisions of the Blue Shield Regulatory Act are constitutional. Furthermore, the Blue Shield Regulatory Act contains a severability clause in section 19, 15 PS §2851-1519, and even if it were assumed that plaintiffs are correct in their allegation that the Blue Shield Regulatory Act is partially unconstitutional, the act as a whole would not be rendered void, and neither would the charter of defendant corporation. Rather, such charter would merely be limited, by the automatic effect of its own terms, to the provisions of the Blue Shield Regulatory Act, as circumscribed in whatever way the court might conclude is necessary.

An allegation that the Blue Shield Regulatory Act is unconstitutional, insofar as its effects upon podiatrists, is not the equivalent of an allegation that the Blue Shield charter is void and must be forfeited in its entirety.

There is another deficiency in plaintiffs' complaint in that it seeks complete forfeiture of Blue Shield's charter and distribution of all its assets. The paragraphs of plaintiffs' complaint which relate to their interest in this action of quo warranto are paragraphs 8, 9 and 10, which provide as follows:

"8. As a result of the aforesaid, Plaintiffs, FRANK KENNEDY, JR. and MARIE URBANY, subscribers

of Defendant's Blue Shield plan are hampered and are not free to choose or select from among all those persons who are duly licensed and qualified to perform certain of those services which are compensable according to the schedule of coverages provided by Defendant Corporation.

"9. As a result of the aforesaid, the practice and reputation of Plaintiffs, MARTIN L. FLEISHMAN and ARNOLD W. NEWMAN, duly licensed podiatrists, are impaired and their performance of necessary beneficial services to the community at large and to Blue Shield (Defendant's) subscribers in particular is irreparably curtailed and circumscribed.

"10. As a result of the aforesaid, the reputation of the Pennsylvania Podiatry Association, and the reputation of its individual members, and of all duly licensed podiatrists in Pennsylvania are impaired, and their performance of necessary beneficial medical services to the community at large and to Blue Shield (Defendant's) subscribers in particular, is irreparably curtailed and circumscribed".

Conceivably, these allegations might justify an action in quo warranto by private individuals or corporations against Blue Shield, if such action were merely designed to restrict or modify Blue Shield's charter so as to eliminate the exclusion of podiatrists and podiatry services from the Blue Shield plan. However, plaintiffs' action is not directed at such an objective, but seeks a complete forfeiture of defendant's charter and distribution of all its assets. It follows that plaintiffs' interest in the objective actually sought is in no respect different from the interest of members of the general public. Accordingly, this action could not be brought by either individual plaintiffs or corporate plaintiff, but may be brought only on the relation of the Attorney General.

Section 2 of the Act of June 14, 1836, P. L. 621, 12 PS §2022, provides as follows concerning the institu-

tion of actions of quo warranto against corporations:

"Writs of quo warranto, in the form and manner hereinafter provided, may also be issued by the several courts of Common Pleas, concurrently with the Supreme Court, in the following cases, to wit:

". . . .

"V. In case any corporation as aforesaid, shall forfeit by misuser, or non-user, its corporate rights, privileges or franchises, or shall do, suffer, or omit to do, any act, matter or thing, whereby a forfeiture thereof shall by law be created, or shall exercise any power, privilege or franchise not granted or appertaining to such corporation.

"And in any such case, the writ aforesaid may be issued upon the suggestion of the Attorney General, or his deputy, in the respective county, or of any person or persons desiring to prosecute the same".

The courts have uniformly construed the above statutory reference to "any person or persons desiring to prosecute the same" to mean that a private individual may institute an action of quo warranto against a corporation only if such person possesses some peculiar personal interest in the controversy, aside from his interest as a member of the general public: Commonwealth ex rel. Schermer v. Franek, 311 Pa. 341 (1933); Hughes v. Eleventh Ward Republican Club, 389 Pa. 103 (1957).

Section 3 of the Act of June 14, 1836, supra, 12 PS §2023 provides:

"Whenever the Attorney General shall have reason to believe that any association as aforesaid, have acted as a corporation, or exercised any of the franchises or privileges thereof, without lawful authority, or that any corporation has forfeited its corporate rights, privileges, or franchises, as aforesaid, or exercised any power, privilege, or franchise, not granted or appertaining to such corporation, it shall be his duty to file, or cause to be filed, a suggestion as aforesaid, and to

proceed thereon for the determination of the matter".

In the case of Commonwealth ex rel. Attorney General v. Sesqui-Centennial Exhibition Association, 8 D. & C. 77, 29 Dauph. 313 (1926), the issue involved was whether or not defendant corporation was exceeding its corporate charter in conducting the sesquicentennial exhibition on Sundays. In our opinion, ruling that defendant corporation be ousted from any right, privilege or authority to operate the sesquicentennial on Sundays, President Judge Hargest, speaking for our court, said, on page 79:

"When a corporation is attempting to exercise powers that it does not possess, the Commonwealth is concerned, and the writ of *quo warranto* must be at the relation of the Attorney General or some authorized agent of the Commonwealth and cannot be upon the suggestion of a mere private relator: Murphy v. Farmers' Bank of Schuylkill County, 20 Pa. 415; Com. v. Commercial Bank, 28 Pa. 383, 391".

The general rule is that the ouster of a corporation from its charter generally involves public rights only, and that a quo warranto proceeding for that purpose must be brought by the Attorney General or other Commonwealth officer, and that it does not lie at the suit of a private individual. See 11 Standard Pa. Prac. 356.

Courts are required to proceed with extreme caution in proceedings which have for their object the forfeiture of corporate franchises, and a forfeiture will not be allowed, except under express limitation or for a plain abuse of power by which the corporation fails to fulfill the design and purpose of its organization: Commonwealth v. Monongahela Bridge Company, 216 Pa. 108, 116 (1906). See also 30 P. L. Encyc. Quo Warranto, 352 §8.

Accordingly, we conclude that plaintiffs' complaint must be dismissed, because it does not set forth a cause of action in that (1) the Blue Shield Regulatory Act meets all constitutional requirements, and (2) the

complaint lacks the requisite allegations indicating that plaintiffs have an interest in the complete forfeiture of Blue Shield's charter and the distribution of all its assets, which is so different and distinct from the interests of the members of the general public in such matters that plaintiffs are entitled to bring this suit in their own names, and not on the relation of the Attorney General.

Considering what we have heretofore said, we make the following

ORDER

And now, January 10, 1966, the demurrer of defendant is sustained at the cost of plaintiffs.